BOWLING ASSOCIATES, LTD., A NEBRASKA LIMITED PARTNERSHIP,
ET AL., APPELLANTS, V. J. ROBERT KERREY AND
DEAN RASMUSSEN, APPELLEES.
562 N.W.2d 714

Filed May 9, 1997.   No. S-95-317.

James A. Eske, of Barlow, Johnson, Flodman, Sutter, Guenzel & Eske, for appellants.

Carl J. Sjulin, of Rembolt Ludtke & Berger, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and COADY, D.J.

PER CURIAM.

In 1977, J. Robert Kerrey and Dean Rasmussen, appellees, planned to create a partnership which would be composed of both general and limited partners. In compliance with the partnership laws, they circulated an offering circular on May 12, 1977. The circular invited individuals to invest, as limited partners, in the general partners' effort to develop, own, and operate a bowling facility known as Sun Valley Lanes in Lincoln, Nebraska. Among the projected expenses set forth in this circular was an expense of $25,000 for a liquor license.

In July 1977, 24 limited partners and appellees, in their capacity as general partners, executed an agreement creating the partnership of Bowling Associates, Ltd. The limited partners

consisted of several businesspersons and corporations who represented themselves to be sophisticated investors of substantial means with sufficient knowledge and experience in business matters. The agreement contained, in part, a provision with regard to the compensation that the general partners would be entitled to receive. More specifically, section 5.3 of the agreement provided:

> Compensation. The General Partners in the aggregate will be paid a salary of $600 per month plus a management fee equal to seven percent (7%) of the Cash Flow of the Partnership as determined immediately prior to the payment of such management fee, herein referred to as the "Management Fee" (to be paid to the General Partners in such proportion as they may agree or in the absence of such agreement as the Managing Partner shall determine in the reasonable exercise of his discretion. Except as may otherwise be provided in this Agreement or as may be decided by the Managing Partner in his absolute discretion, reasonably applied, no Partner shall receive any salary, fees or payments from the Partnership other than distributions of Cash Flow to which such Partner may be entitled.

On February 8, 1978, a liquor license, restricting the sale of alcoholic beverages to the lounge area of the bowling alley, was issued to appellees individually. All fees associated with the purchase of such license were paid by Bowling Associates. In October 1981, the designated licensee was changed to K-R Enterprises, a Nebraska partnership owned by appellees. As anticipated by Kerrey, an ordinance was passed in 1981 legalizing the service of alcoholic beverages in the bowlers' area. Accordingly, the liquor license which was held by K-R Enterprises was extended to include the bowling lanes as well as the lounge.

On December 2, 1982, Rasmussen informed the limited partners that Kerrey and he would like to transfer the license held by K-R Enterprises to Bowling Associates. The limited partners were informed in February 1983 that the transfer of the liquor license had been approved by the city council.

In January 1983, K-R Enterprises and Bowling Associates entered into an agreement whereby K-R Enterprises agreed to

sell to Bowling Associates leasehold improvements, inventory, and equipment located at Sun Valley Lanes. K-R Enterprises was to receive $25,000 for such sale.

The annual meeting for the business year 1983 was held in March 1984. A printed balance sheet for 1983 was prepared, indicating as a new asset a deferred charge of $25,000 for a liquor license. The partnership's "Statement of Changes in Financial Position" for that same year indicated that $25,000 had been paid out for a liquor license. All limited partners were given copies of the financial statements.

In 1987, appellees transferred their general partnership interest in Bowling Associates to Kerrey Holdings. Kerrey Holdings is a Nebraska general partnership in which Kerrey and Rasmussen are the sole partners.

On November 4, 1993, Bowling Associates and 17 limited partners, appellants, filed a derivative action in the district court for Lancaster County, Nebraska. The second amended petition contained two causes of action, the second of which is at issue on appeal: Appellees unlawfully received a $25,000 payment from Bowling Associates in 1983.

In October 1994, appellees filed a motion for summary judgment as to the second cause of action. A hearing was held in December 1994. On January 31, 1995, the district court entered an order, ruling on objections made by the parties during the hearing. The court overruled appellants' objections to portions of exhibit 1, an affidavit by Rasmussen. The court also excluded appellants' exhibit 7, which was an affidavit by plaintiff Roger Downs verifying the truthfulness of the allegations contained in the second amended petition. The court then granted appellees' motion for summary judgment and dismissed the second cause of action, which was barred by the statute of limitations.

Appellants filed a motion for new trial, which was overruled. Appellants timely filed an appeal on March 27, 1995. Pursuant to our power to regulate the caseloads of the Nebraska Court of Appeals and this court, on our own motion we removed this case to our docket.

Appellants assign three errors: (1) The district court erred in granting appellees' motion for summary judgment, (2) the district court erred in overruling appellants' objections to exhibit 1, and (3) the district court erred in excluding exhibit 7.

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Mahlin v. Goc, ante* p. 238, 561 N.W.2d 220 (1997).

Pursuant to Neb. Rev. Stat. § 25-207(4) (Reissue 1995), an action for relief on the ground of fraud can only be brought within 4 years. Such action does not accrue, however, until there has been a discovery of the facts constituting the fraud, or facts sufficient to put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would lead to such discovery. *Broekemeier Ford v. Clatanoff*, 240 Neb. 265, 481 N.W.2d 416 (1992). While appellants contend in their petition that appellees violated the limited partnership agreement by receiving the payment of $25,000 in 1983, they also contend that such cause of action could not reasonably have been discovered prior to March 1992. We disagree.

Appellants received copies of the 1983 financial statements in 1984. Such statements included a "Statement of Changes in Financial Position." Such statement clearly indicated that a payment of $25,000 had been made in 1983 for a liquor license. Furthermore, appellants allege in their petition that the fees necessary for purchasing a license in 1978 had already been paid by Bowling Associates. An additional output of $25,000 for a liquor license in 1983 would have put a person of ordinary intelligence and prudence on inquiry notice which, if pursued, would lead to discovery of a potential cause of action.

This court also finds particularly interesting that appellants offer no explanation for why they were not capable of discovering the alleged wrongdoings until 1992. A review of the record indicates that appellants received no new information with regard to the payment since receiving the financial statements for 1983. Appellants have failed to demonstrate why what was sufficient to put them on notice in 1992 was insufficient to put them on notice in 1984.

·There is uncontroverted evidence that appellants received copies of the financial statements which provided that funds were expended for a liquor license in 1983. We therefore conclude as a matter of law that appellants were on notice when they received the financial statements in 1984 and affirm the district court's decision to grant appellees' motion for summary judgment as to appellants' second cause of action.

AFFIRMED.