EDEN PRAIRIE INDEPENDENT SCHOOL DISTRICT 272 and Insurance Company of North America, Respondents,

v.

AUTO–OWNERS INSURANCE COMPANY, Appellant,

Russell L. Jacques, Individually and as trustee for the heirs of Kellie Lynn Jacques, Decedent; Milton Hafed Banks; and Cindy Jean Banks, Defendants.

No. 48982.

Supreme Court of Minnesota.

May 11, 1979.

Peterson, Holtze & Treat, Theodore N. Treat, Jr., and Todd Maxwell Henshaw, Minneapolis, for appellant.

Faegre & Benson, Martin N. Burke, and John P. Borger, Minneapolis, for Eden Prairie Ind. Sch. Dist. 272, et al.

Heard before ROGOSHESKE, TODD, and YETKA, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

This is an appeal from the judgment entered pursuant to an order of the Hennepin

County District Court granting summary judgment in favor of respondents Eden Prairie Independent School District 272 (School District) and Insurance Company of North America (INA) and against Auto Owners Insurance Company (Auto Owners) in a declaratory judgment action. The sole issue raised in the trial court and on appeal is whether the School District's potential liability in an underlying wrongful death action is covered by its automobile liability policy or its general liability policy. We hold that, on the record submitted, there was no "loading" of the schoolbus within the meaning of the automobile liability policy and that coverage is afforded by the School District's general liability policy. Accordingly, we reverse.

On the morning of April 23, 1975, 7-year-old Kellie Lynn Jacques and her sister walked to their friends' home to catch the Eden Prairie schoolbus. Both the Jacques' home and their friends' home were located south of Hennepin County Road No. 1, which runs east and west in Eden Prairie. The bus stop was located across Hennepin County Road No. 1, immediately to the north of the friends' home. The girls, including Kellie, crossed the road to put their books near the pickup spot and then re-crossed to play in the driveway of their friends' home until the arrival of the bus. Kellie apparently observed the bus approaching from the east at an intersection 800 feet away, announced that the bus was coming, and ran into the road in the direction of the bus stop. She was struck and fatally injured by an automobile approaching from the west.

On August 14, 1975, the School District was served with a summons and complaint in a wrongful death action by the trustee for the heirs and next of kin of Kellie Lynn Jacques, naming it, the driver of the automobile, and its owner as defendants. The complaint alleged liability against the School District on the grounds that it had failed to formulate, disseminate, and enforce rules for the safe transportation of school children, and that it had negligently established bus routes requiring young children to cross busy thoroughfares. The schoolbus driver was not named as a defendant, nor was there any allegation that the schoolbus had been involved in the accident.

At the time of the accident, the School District was insured under a general policy issued by INA and an automobile policy issued by Auto Owners. The INA policy excluded coverage for personal injury or property damage "arising out of the ownership, maintenance, operation, use, loading or unloading" of any automobile. The Auto Owners policy provided coverage for bodily injury or property damage "arising out of the ownership, maintenance or use, including the loading or unloading thereof, of the automobile." Both policies required the insurer to defend suits against the insured. Because the "loading and unloading" clause operated as an inclusion in the Auto Owners policy and an exclusion in the INA policy, if the accident is covered by that clause, only Auto Owners had an obligation to defend and indemnify the School District.

INA undertook the defense of the wrongful death action subject to a reservation of rights. After Auto Owners repeatedly rejected the School District's tenders of the defense, the School District and INA commenced this declaratory judgment action to establish that any liability arising out of the wrongful death action was covered by the Auto Owners policy. Upon cross-motions for summary judgment, the district court granted INA's motion and denied Auto Owners' motion, ruling that Auto Owners, not INA, was obligated by the loading clause in its policy to assume the defense of the underlying action and pay any judgment up to its applicable policy limits. Judgment was entered and Auto Owners appealed.

■ Whether or not the schoolbus was loading or unloading at the time of the accident is the threshold question. See, *National Family Ins. Co. v. Boyer*, 269 N.W.2d 10, 12 (Minn.1978). The trial court viewed the question from the standpoint of the school child and concluded that attempting to cross a highway to reach a designated

bus stop to catch an oncoming bus constituted loading. Minn.St. 169.44 and Minn. Reg.Edu. 240I and 243, however, indicate that loading, in the context of schoolbuses, involves some action on the part of the bus-driver. Proper procedure for picking up school children requires the driver to actuate the flashing amber prewarning signals at least 100 feet before stopping to load a child and to extend the stop arm and actuate the flashing red lights after stopping. The stop arm must remain extended and the flashing red lights on until the school child has crossed the road and boarded the bus. We believe that the loading process commences when the driver properly turns on the amber prewarning signals as he approaches the boarding point. It terminates when he properly retracts the stop arm and extinguishes the flashing red lights.

In the instant case the schoolbus was 800 feet from the bus stop when Kellie ran into the road and was fatally injured. Although she saw the bus and presumably intended to board it, there is no indication that the driver observed her or that he had initiated the loading procedure. On these facts, we hold that there was no loading of the schoolbus within the meaning of the Auto Owners policy.[1]

Reversed.

---

1. Auto Owners also contends that if loading was in process at the time of the accident, the injuries did not arise out of the loading in the required causal sense. Its argument takes two forms: (1) that the loading was not a "but for" cause of the injuries and (2) that the theories of liability asserted in the complaint in the wrongful death action are more in the nature of general business risks than automobile hazards. As our holding is dispositive, we need not discuss these claims.