825 P.2d 954

**FARMERS INSURANCE COMPANY OF ARIZONA, a corporation, Plaintiff–Appellee,**

v.

**Heather TILL, a single woman, Defendant–Appellant.**

**No. 1 CA–CV 90–430.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 12, 1991.

Review Denied March 17, 1992.

Aspey, Watkins & Diesel by Donald H. Bayles, Jr., Flagstaff, for plaintiff-appellee.

Law Office of Michael Reddig, P.C. by Michael S. Reddig, Flagstaff, for defendant-appellant.

## OPINION

LEVI RAY HAIRE, Retired Judge.

On this appeal we must determine whether an automobile liability insurance policy issued by Farmers Insurance Company (Farmers) covered injuries the defendant, Heather Till, sustained when attacked by a dog while in the covered vehicle. The trial court ruled that there was no coverage and granted Farmers' motion for summary judgment.

### FACTS AND PROCEDURAL HISTORY

The material facts are not disputed. Heather Till was waiting for her fiance to finish work at a restaurant in Flagstaff. While there, she met Linus Neinstadt and Jill Peterson. Till and Peterson decided to go to a store in a pickup/camper owned by Neinstadt and Peterson. Peterson removed her dog from the cab of the truck and placed it in the camper section. She did not, however, close the sliding glass window that separated the camper from the cab. Peterson and Till entered the cab. Peterson started the engine of the truck and let it run for approximately one to two minutes. During this time, the dog pushed its way through the unsecured window, halfway into the cab, and Till began petting

it. After Till had petted the dog for about a minute, she withdrew her hand. The dog then attacked Till and injured her.

When Till sued Peterson and Neinstadt, they tendered the defense of the action to Farmers. Thereafter, Farmers filed this declaratory judgment action, claiming that because the accident did not involve the use of the insured vehicle, there was no coverage under the policy. The pertinent language in Farmers' policy states:

> We will pay damages for which any insured person is legally liable because of bodily injury to any person and/or property damage arising out of the ownership, maintenance or *use* of a private passenger car ... (emphasis added).

Upon the uncontroverted facts, the trial court found that there was no coverage and granted Farmers' motion for summary judgment.

## DISCUSSION

The issue presented on appeal is whether the dog's attack on Till was one "arising out of the ... use" of the insured vehicle. Till contends that Peterson's action in moving the dog from the passenger cab to the camper section constituted a "loading" of the dog, a use of the truck, and that Peterson's negligence consisted of not securing the sliding glass window between the cab and the camper. Farmers argues that any "loading" was complete upon the dog's having entered the camper and, therefore, the accident's connection with the truck is merely coincidental.

 In an insurance policy, the words "arising out of" are "broad, general, and comprehensive terms effecting broad coverage." *Brenner v. Aetna Ins. Co.*, 8 Ariz.App. 272, 275, 445 P.2d 474, 477 (1968). They import a concept of causation or a causal relationship between the accident and the automobile. *Id.* However, the causal connection does not equate to proximate cause. *Id.* "[I]t is not necessary that the injury be directly and proximately caused, in the strict legal sense, by the activities of the motor vehicle itself." *Morari v. Atlantic Mutual Fire Ins. Co.*, 105 Ariz. 537, 538–39, 468 P.2d 564, 565–66

(1970), quoting *Columbia Southern Chemical Corp. v. Manufacturers and Wholesalers Indemnity Exchange*, 190 Cal. App.2d 194, 201–02, 11 Cal.Rptr. 762, 767. By the same token, the mere fact that the injury occurred in the automobile does not lead inexorably to the conclusion that there is coverage. *Morari v. Atlantic Mutual Fire Ins. Co.*, 105 Ariz. at 540, 468 P.2d at 567; *Brenner v. Aetna Ins. Co.*, 8 Ariz. App. at 276, 445 P.2d at 478.

A comparison between *Morari* and *Brenner* serves to illustrate the necessary causal connection. In *Brenner*, three men were riding in a truck returning from a "hunting and exploration" trip. The truck's owner, mindlessly toying with a handgun, accidentally shot the victim. Division 2 of this court held that the automobile policy on the truck did not afford coverage because of the lack of a causal connection:

> From the standpoint of causation, this injury could have occurred in the woods, in a hunting lodge, or in a house. That the situs of the accident was in fact within a motor vehicle and the fact that both the tort-feasor and the injured party were "using" the car at the time does not make the injury one "arising out of the * * * use" of the vehicle. Nor did the injury result from any incident of "ownership" of the vehicle.

8 Ariz.App. at 276, 445 P.2d at 478.

In *Morari*, the issue was whether Mr. Hallabrin's homeowner's policy covered the accident which occurred in his car. The homeowner's policy excluded coverage for the use, including loading and unloading, of an automobile not in close proximity to his home. The accident occurred when Hallabrin and Morari were deer hunting. Driving along a forest road they spotted a deer. Hallabrin stopped the car, got out and reached back in to get his rifle. Immediately upon his touching the rifle it fired, injuring Morari. The Arizona Supreme Court held that the reaching back into the car to retrieve the gun constituted an "unloading" of the vehicle not in close proximity to home, and thus the homeowner's policy excluded coverage. In effect the court

held that the accident would have been covered by the automobile policy:

> Appellant argues that Hallabrin's negligence was in keeping a loaded gun, not on safety, in his truck and that the negligence was complete prior to the unloading and consequently the unloading was not the cause of the accident. We think appellant is shifting the meaning of the word "cause." The unloading does not have to be the cause in the sense of proximate cause of the accident. The accident need only be connected with the unloading. Hallabrin's act in keeping the gun loaded and not on safety created a dangerous condition from which reasonable men might conclude greater care in its subsequent handling was required in order to prevent its accidental discharge. No doubt the rifle could have been removed from the truck with such care that Morari would not have been injured. The careless use in connection with the unloading was the negligent act from which the injury stemmed.

> Morari relies on ... *Brenner v. Aetna Insurance Co.*, 8 Ariz.App. 272, 445 P.2d 474.... We think [it is] distinguishable.

> *Brenner* was a case in which three persons were riding in an automobile.... We think it is obvious that there was no connection between the toying with the gun, the negligent act, and the use of the motor vehicle. That is not the case here. The rifle was part of the cargo of Hallabrin's truck. The truck was being used for hunting and the transportation of the hunters and their rifles. The carriage of the rifles was part of the use of the truck in hunting.

*Id.*, 105 Ariz. at 539–40, 468 P.2d at 566–67.

Further illustrating the lack of coverage when the automobile is merely the situs of the accident are *Mazon v. Farmers Ins. Exchange*, 107 Ariz. 601, 491 P.2d 455 (1971) and *Vanguard Ins. Co v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962 (1972). In the former case, Mazon was seated in his car when he was struck in the eye by a rock thrown by an occupant of another vehicle. In the latter case, Cantrell was shot by Browning following Browning's robbery of the drive-up liquor window where Cantrell was working. Browning, as he was driving away from the scene, fired a shot over his shoulder in an attempt to scare Cantrell. In both cases, the courts held that there was no coverage under the automobile policies. In essence, the involvement of the automobiles was merely coincidental and the injuries did not arise out of the use of the autos: there was no "causal connection."

In *State Farm Mutual Automobile Ins. Co. v. Transport Indemnity Co.*, 109 Ariz. 56, 505 P.2d 227 (1973), the court held that there was coverage when liquified petroleum gas escaped and was ignited at the conclusion of its being pumped into a tank mounted on the insured vehicle. The retailer of the gas was negligent in failing to inspect the valves on the truck's tank and in having a lit heater in close proximity to the loading area. State Farm claimed that its policy did not cover the accident because there was no causal relationship, citing *Brenner*. The Arizona Supreme Court disagreed, distinguishing *Brenner*. It noted that this case was more like *Morari*, in that the accident arose out of a loading. 109 Ariz. at 58, 505 P.2d at 229. *See also, Mission Ins. Co. v. Aid Ins. Services*, 120 Ariz. 220, 585 P.2d 240 (1978) (the term "use" extends to both the loading and the unloading of a vehicle).

■ Till argues that the causal connection in this case arises out of Peterson's "loading" the dog into the camper section to keep it away from the passenger in the cab section. Farmers responds that the loading had long since been concluded by the time the dog attacked Till.

We find it unnecessary to decide whether the loading of the vehicle was continuing at the time of the attack, since here the injury clearly arose out of the use of the vehicle. When, as in this case, a policy does not contain a "loading and unloading" clause, many courts have nevertheless used a "loading and unloading" analysis as furnishing an appropriate standard for determining when "use" of the vehicle begins or ends. These courts have concluded that "use" continues from the commencement

of loading through the unloading process. Here, even if we assume, as urged by Farmers, that the loading had been completed by the time of the attack, the injury clearly arose out of a continuing use of the vehicle.

When Till and Peterson decided to go to the store in the truck, Peterson moved the dog from the cab to the bed/camper section of the pickup. Her evident purpose was to take the dog with her and, for that purpose, to separate her passenger from her cargo, the dog. As Till argues in her briefs, pickup trucks are quite good for transporting both humans and animals and keeping them separate while doing so. In this case, the separation failed. One of the reasons for the failure of separation demonstrates the necessary causal link between the truck and the accident. Peterson failed to secure the sliding glass window which separated the cab from the camper. In short, Peterson used the "inherent"[1] design of the pickup/camper to separate her passenger from her potentially dangerous cargo. This constituted a "use" of the vehicle. The present situation is not significantly different from a case, for instance, where a tank mounted on a vehicle fails and spills its contents on another. In such a case, part of the function of the vehicle would be to contain a dangerous substance. If the failure to contain the liquid results in injury, that injury arose out of the use of the vehicle. *Cf. Mission Ins. Co. v. Aid Ins. Services, supra* and *State Farm Mutual Automobile Ins. Co. v. Transport Indemnity Co., supra.* We hold that under these circumstances, the injury arose out of the "use" of the insured vehicle and that the policy provided coverage.[2]

## CONCLUSION

Since the injury arose out of the "use" of the truck, it was covered under the policy, and the trial court erred in granting Farmers' motion for summary judgment.

Till has requested attorneys' fees pursuant to A.R.S. § 12–341.01. In the exercise of our discretion, we grant the request pending her compliance with Rule 21(a), Arizona Rules of Civil Appellate Procedure.

The trial court's award of attorneys fees against Till is set aside, and the summary judgment in favor of Farmers is reversed. The matter is remanded for further proceedings consistent with this opinion.

CLABORNE, P.J., and CONTRERAS, J., concur.

Note: LEVI RAY HAIRE, a retired judge of the Court of Appeals, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. art. 6, § 20, and A.R.S. § 38–813.

1. *See Brenner v. Aetna Ins. Co.,* 8 Ariz.App. at 275, 445 P.2d at 477, quoting *Mason v. Celina Mutual Ins. Co.,* 161 Colo. 442, 423 P.2d 24, 25 (1967), quoting 7 Appleman, *Insurance Law and Practice* § 4317, at 146.

2. Farmers cites *American States Ins. Co. v. Allstate Ins. Co.,* 484 So.2d 1363 (Fla.App.1986) in support of its position. In *American States,* the Florida Court of Appeals held that there was no coverage when a dog attacked the victim through an open window in the camper section when the victim and the driver had just exited the cab to enter a store. The court distinguished that case from *National Indemnity Co. v. Corbo,* 248 So.2d 238 (Fla.App.1971). In *Corbo,* the court had held that there was coverage when a dog, being driven from its home to the laundromat where it worked as a guard dog, attacked the victim while the car was parked at a store en route to the laundromat. The court distinguished the two cases, holding that in *Corbo* the dog was being transported to work while in *American States* the dog was "merely along for the ride." We do not find this distinction persuasive. The purpose of the vehicle's use—business versus pleasure, or primary use versus secondary use—has no logical bearing on whether the vehicle was in fact being used and whether the accident arose out of that use.